[813 NYS2d 468]

In the Matter of HARRIS LITWAK, an Attorney, Respondent.
GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT,
Petitioner.

Second Department, April 4, 2006

## APPEARANCES OF COUNSEL

*Rita E. Adler*, Hauppauge, (*Mitchell T. Borkowsky* of counsel), for petitioner.

*Jerome Karp*, Brooklyn, for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee served the respondent with a petition dated July 26, 2004, containing seven charges of professional misconduct, and the respondent served an answer dated August 19, 2004.

At a preliminary conference held on October 26, 2004, the parties agreed to amend paragraph 10 of the answer to include a reference to paragraph 9 thereof. A hearing was held on December 13, 2004, during which the petitioner submitted 31 exhibits into evidence and rested without calling any witnesses. The respondent appeared with counsel, testified on his own behalf, and submitted a stipulation dated December 13, 2004, stating what testimony Marvin Weinroth, an attorney, would have provided had he appeared at the hearing. Special Referee Pizzuto sustained Charges One through Seven, and the petitioner now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent opposes the petitioner's motion and cross-moves to disaffirm, in part, the Special Referee's report.

Charge One alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by violating his fiduciary obligations regarding his handling of escrow funds. In or about April 1999, the respondent opened an escrow account at the Dime Savings Bank of New York entitled, "Harris Litwak, Attorney Escrow" (hereinafter the escrow account), comprised of two separate, but linked, interest-bearing accounts consisting of a money market

account (hereinafter the investment component) and a regular checking account (hereinafter the disbursement component). Checks from the escrow account could only be drawn from the disbursement component. In order to disburse funds held in the investment component by check, a transfer of funds had to be made from the investment component to the disbursement component. From April 1999 through December 2001, the respondent used the escrow account incident to his law practice and deposited client funds therein.

In or about July 1999, the respondent represented Herb Raab and Lorretta Raab in their sale of a commercial building for the sum of $1.6 million. The purchaser was represented by Samuel L. Scollar, Esq. Pursuant to the contract of sale, the purchaser was required to deliver a down payment of $80,000 to the respondent.

A rider attached to the contract of sale provided, in part, as follows: "The down payment herein shall be held in escrow by Seller's Attorney, HARRIS LITWAK, ESQ., in his *non-interest bearing account*, until closing, cancellation, or default of the Purchaser hereunder" (emphasis added).

On or about July 16, 1999, the respondent received a check in the sum of $80,000 from the purchaser, payable to the respondent for the down payment, which he deposited into the investment component of the escrow account. Title closed on November 5, 1999. Between July 16, 1999 and November 5, 1999, the down payment held by the respondent in the interest-bearing escrow account generated the sum of $977.90 in interest, which was credited to the account. On or about November 5, 1999, the respondent transferred the initial down payment in the sum of $80,000 from the investment component of the escrow account to the disbursement component. At the closing, the respondent drew and delivered four checks against the disbursement component of the escrow account, totaling the sum of $80,000, to disburse the initial down payment, but he failed to disburse or account for the $977.90 in interest that had accrued.

Approximately two years later, on or about September 7, 2001, the respondent drew check number 145, in the amount of $977.90 payable to "S & H Raab" against the disbursement component of the escrow account, and delivered the same to his client. To date, the respondent has failed to disburse or account for any of the interest that accrued on the $977.90 during the almost two years it remained in the escrow account from the closing through September 7, 2001.

The respondent's deposit of the down payment into an account that generated interest on the funds was made without the knowledge or consent of the seller, or the purchaser and his attorney, and was in contravention of the specific terms of the contract of sale.

Charge Two repeats and realleges the allegations set forth in Charge One and further alleges that the respondent failed to promptly notify any of the parties to the escrow that the funds had generated interest. By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 9-102 (c) (1) (22 NYCRR 1200.46 [c] [1]).

Charge Three repeats and realleges the allegations set forth in Charge One and further alleges that the respondent failed to account to any of the parties to the escrow for the interest generated on the funds. By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 9-102 (c) (3) (22 NYCRR 1200.46 [c] [3]).

Charge Four repeats and realleges the allegations set forth in Charge One and further alleges that the respondent failed to promptly pay or deliver to any of the parties to the escrow the interest generated by the funds. By reason of the foregoing, the respondent violated Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]).

Charge Five repeats and realleges the allegations set forth in Charges One, Two, Three, and Four, and further alleges that the respondent violated his fiduciary obligations by commingling his personal funds with client funds, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

At all relevant times, the respondent was the sole shareholder, director, officer, and employee of a New York corporation named Harris Litwak, Inc. In or before June 1999, the respondent opened a non-interest-bearing checking account at the Greenpoint Savings Bank, denominated Harris Litwak, Inc. (hereinafter the corporate account).

From June 1999 through at least December 2001, the respondent deposited personal funds, including legal and consulting fees, into the corporate account, paid his expenses, both personal and business, from the corporate account, and did not maintain any personal bank accounts in his own name. Between June 1999 and June 2001, the respondent drew six checks totaling $175,000 against the corporate account payable to "Harris Lit-

wak," and deposited them into the investment component of his escrow account. The aforesaid funds were personal funds belonging to the respondent which remained on deposit and commingled with client funds in the investment component of the escrow account through and including on or about December 18, 2001.

Charge Six repeats and realleges the allegations set forth in Charges One, Two, Three, Four, and Five and further alleges that the respondent engaged in conduct involving fraud, deceit, or misrepresentation, and which adversely reflects on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]). Further, from 1987 through in or about 1997, the respondent was a shareholder, officer and employee of Litwak Development Corp. and I.J. Litwak & Co., which were family-owned real estate development and construction companies (hereinafter the Litwak Companies). From 1992 through 2001, the respondent, his father, and the Litwak Companies were defendants in three civil actions brought by Con-Solid Contracting, Inc., in the Supreme Court, Queens County.

On or about July 20, 2001, the Supreme Court directed a verdict: (i) against Litwak Development Corp. in the principal sum of $93,728.71, plus interest from 1992, for a total judgment in the sum of $175,251.42; (ii) against I.J. Litwak & Co. in the principal sum of $20,315.50, plus interest for a total judgment in the sum of $38,217.77; and (iii) against the respondent and his father in the principal sum of $93,728.71, plus interest, for a total judgment in the sum of $175,251.42. Final judgments were entered on or about August 6, 2001. From June 14, 1999, through June 29, 2001, during the pendency of the aforesaid civil actions, the respondent transferred the sum of $175,000 in personal funds, referred to in the description Charge Five above, from the corporate account to the escrow account, in an effort to conceal his personal assets and to shield them from execution by a potential judgment creditor.

Charge Seven repeats and realleges the allegations set forth in Charges One, Two, Three, Four, Five, and Six, and alleges that the respondent failed to maintain required bank and bookkeeping records for the escrow account, in violation of Code of Professional Responsibility DR 9-102 (d) (2) and (9) (22 NYCRR 1200.46 [d] [2], [9]). From April 1999 through December 2001, the respondent failed to maintain a record or ledger book for the escrow account showing the source of all funds deposited

therein, the names of all persons for whom funds were held, the amounts of such funds, and the descriptions, amounts, and names of all persons to whom such funds were disbursed. From April 1999 through December 2001, the respondent failed to make accurate entries in a ledger book of all deposits into, and disbursements from, the escrow account at or near the time of the act, condition, or event recorded.

The respondent does not challenge the Special Referee's findings with respect to Charges One, Two, Five, and Seven. The credible evidence adduced and the reasonable inferences to be drawn therefrom support the Special Referee's findings in sustaining Charges One through Seven. The motion to confirm the Special Referee's report is granted and the cross-motion to disaffirm, in part, the Special Referee's report is denied.

In determining an appropriate measure of discipline to impose, the respondent submits that there was no client complaint from Mr. Raab, and that this matter arose in connection with an unrelated situation. Further, there was never a complaint against the respondent before this matter, and there has not been any subsequent complaint. The petitioner has confirmed that the respondent has not been the subject of any prior disciplinary matter.

Notwithstanding the mitigation advanced, the respondent is guilty of serious professional misconduct. Under the totality of the circumstances, the respondent is publicly censured for his professional misconduct.

PRUDENTI, P.J., FLORIO, H. MILLER, SCHMIDT and SPOLZINO, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted and the respondent's motion to disaffirm, in part, is denied; and it is further,

Ordered that the respondent is publicly censured for his professional misconduct.